UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILSON MAYO,

                    Plaintiff,

         v.                                              **DECISION AND ORDER**
                                                         11-CV-869S
JAMES CONWAY, SGT. J. LAVIS, J. COLLIER,
S. KELLY, BOUGHKITE,

                    Defendants.


## I. INTRODUCTION

In this action, pro se Plaintiff Wilson Mayo alleges under 42 U.S.C. § 1983 that

Defendants violated his Eighth and Fourteenth Amendment rights by assaulting him, falsely

charging him with violating inmate rules, and denying him due process during his

disciplinary hearing.  Presently before this Court is Defendants' Motion to Dismiss Plaintiff's

first and fourth causes of action.[1]  For the following reasons, Defendants' motion is granted

in part and denied in part.


## II. BACKGROUND

**A.     Procedural History**

Plaintiff commenced this action on October 18, 2011, by filing a Complaint in the

United States District Court for the Western District of New York.  Because Plaintiff was

granted *in forma pauperis* status, this Court screened his Complaint pursuant to 28 U.S.C.

§ § 1915(c)(2)(B) and 1915A(a).   As a result of this screening process, this Court

---

[1]In support of their Motion to Dismiss, Defendants filed a memorandum of law (Docket No. 7).  In response, Plaintiff filed a reply memorandum and an affidavit in opposition (Docket No. 13).

dismissed the complaint as against Brian Fischer, Commissioner, with leave for Plaintiff to amend to allege Fischer's personal involvement in the alleged constitutional violations. (See Docket No. 4).  Plaintiff, however, did not replead any claims against Commissioner Fischer in his amended complaint.  (Docket No. 5).  This Court therefore dismissed with prejudice all claims against Fischer. (Docket No. 6).

**B.    Facts**

The following facts, drawn from the Amended Complaint, are assumed true for purposes of the instant motion.  At all times relevant, Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision incarcerated at the Attica Correctional Facility. (Amended Complaint, Docket No. 5, p. 8, ¶ 1).[2]  Plaintiff is now incarcerated at the Elmira Correctional Facility. (Am. Compl., p. 1).

Plaintiff alleges that Defendants assaulted him, filed a false misbehavior report against him, and testified falsely during his disciplinary hearing.  At all times relevant, Defendant Conway was the Superintendent of Attica; Defendant Lavis was a lieutenant at Attica; and Defendants Collier and Kelly were correctional officers at Attica.

Plaintiff alleges that Defendant Kelly assaulted him on February 12, 2009, when Plaintiff was leaving the Attica visitation room after Bible Study. (Am. Compl., p. 8, ¶¶ 1-13).  According to Plaintiff, he rang the buzzer six or seven times and waited more than 15 minutes before Defendant Kelly opened the door to let him out of the visitation room. (Am. Compl., p. 8, ¶ 3).   At that time, Defendant Kelly expressed annoyance that Plaintiff rang the buzzer so many times. (Am. Compl, p. 8, ¶ 4).   He then took Plaintiff's ID card and strip-searched him.  (Am. Compl., p. 9, ¶ 11, p. 37).

---

[2]Plaintiff's Amended Complaint and the five exhibits attached to it are consecutively numbered as a single document.

After the strip-search, Defendant Kelly told Plaintiff that he was confiscating his glasses and belt. (Am. Compl., p. 9, ¶ 11, p. 37). When Plaintiff protested and asked to speak to a sergeant, Defendant Kelly told him to "shut [his] black mouth," pushed him onto a bench, punched him in the face, and threw him on the floor. (Am. Compl., p. 8, , ¶¶ 8, 11, 13.) Three or four officers then arrived at the scene. (Am. Compl., p. 9, ¶ 13).

After this altercation, Plaintiff was taken to the prison medical unit, where he was drug tested and his injuries were examined and photographed. (Am. Compl., p. 9, ¶ 14). Plaintiff remained under observation awaiting the results of the drug tests in the Special Watch Unit for three days. After his drug tests returned negative, he was transferred to solitary confinement in the Special Housing Unit, on February 15, 2000. (Am. Compl., p. 9, ¶¶ 14-15).

On February 18, 2009, Plaintiff was served with a Misbehavior Report, written by Defendant Kelly, which charged Plaintiff with violating rule 100.11, Assault on Staff, and rule 104.11, Violent Conduct. (Am. Compl., p. 40).

On February 20, 2009, Defendant Collier was assigned to be Plaintiff's Employee Assistant for the purpose of assisting Plaintiff in his upcoming disciplinary hearing. (Am. Compl., p. 10, ¶ 17). Plaintiff alleges that Defendant Collier gave him false information regarding the day of the incident with Defendant Kelly, which undermined Plaintiff's credibility during the disciplinary hearing. Specifically, Plaintiff asked Defendant Collier to find out what happened to his glasses and belt, who searched Plaintiff before he entered the visitation room (to corroborate that he was wearing glasses and a belt when he entered the room), and to get the names of the officers working at the visitation room desk so they could be called as witnesses. (Am. Compl., p. 10, ¶ 10). Defendant Collier allegedly told

3

Plaintiff that Defendant Kelly was the officer who searched him at the entrance to the visitation room and Kelly later put Plaintiff's glasses and belt with Plaintiff's personal property. (Am. Compl., p. 11, ¶ 21). Defendant Kelly denied that he told this to Defendant Collier, and Defendant Collier was never called to testify at the disciplinary hearing. (Am. Compl., p. 11, ¶ ¶ 22, 24).

Plaintiff's disciplinary hearing began on February 21, 2009, and was presided over by Defendant Lavis. (Am. Compl., p. 12, 26). Plaintiff contends that Defendant Lavis refused to let him call witnesses, refused to let him ask questions of witnesses directly, and based his ultimate decision on false statements by Defendant Kelly. (Am. Compl., p. 13, ¶ ¶ 42-50). Plaintiff contends that because there were factual discrepancies concerning who pat-frisked Plaintiff before he entered the visitation room, Defendant Lavis should have called additional witnesses or consulted the visitation room log book. (Am. Compl., p. 15, ¶ 62).

On February 23, 2009, Plaintiff wrote a letter to the Superintendent of Attica, Defendant Conway, asking him to talk to Defendant Kelly and to investigate the misbehavior report. (Am. Compl., p. 23). Plaintiff alleges that Defendant Conway received this letter and forwarded it to Defendant Lavis. (Id.).

## III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Since Plaintiff

is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Plaintiff's first claim is that Defendant Conway violated his Fourteenth Amendment rights by failing to protect him.  Failure to protect, however, implicates the Eighth Amendment, not the Fourteenth.  See Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  But given Plaintiff's pro se status, this Court interprets Plaintiff's claim liberally and construes it to allege a violation of his Eighth Amendment rights.

Plaintiff's second claim is that Defendant Collier denied him his Due Process rights by failing to effectively assist him in his disciplinary hearing, in violation of his Fourteenth Amendment rights.

Plaintiff's third claim is that Defendant Lavis violated his Fourteenth Amendment Due Process rights by conducting an improper disciplinary hearing.

Plaintiff's final claim has two parts.  First, Plaintiff alleges that Defendant Kelly filed a false Misbehavior Report against him.  Second, this Court construes Plaintiff's Amended Complaint to raise an Eighth Amendment excessive force claim against Defendant Kelly, based on the physical altercation outside the visitation room.

Defendants move to dismiss Plaintiff's first claim and the first part of Plaintiff's fourth claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## A.     Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When determining whether a complaint states a claim, the court must construe the complaint liberally, accept all factual

5

allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  Although the complaint need not include detailed factual allegations, the plaintiff must show the "grounds of his entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.; Goldstein, 516 F.3d at 56.  But the Second Circuit does not interpret Twombly as "requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

Federal pleading standards are generally not stringent.  See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (describing federal pleading requirement as "bare bones notice pleading"); Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003) ("The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." (quotation and citation omitted)).  Rule 8(a) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It is necessary, however, "that the plain statement possess enough heft to show that the pleader is entitled to relief." Twombly, 127 S.Ct. at 1966.

In pro se actions, the United States Supreme Court has rejected the idea that the plausibility standard requires amplification with factual allegations to render the claim

6

plausible.  See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

In Erickson, the Supreme Court reversed the dismissal of a prisoner's Eighth Amendment

claim, holding the court of appeals had "depart[ed] from the liberal pleading standards" of

Rule 8(a).  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson, 127

S.Ct. at 2200).  Although the Court did not clarify when the plausibility standard requires

factual amplification, it noted that "a *pro se* complaint however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 127

S.Ct at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251

(1976)).

**B.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting

under color of state law, deprive an individual of rights, privileges, or immunities secured

by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide

a source of substantive rights, but rather, a method for vindicating federal rights conferred

elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386,

393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443

U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a

threshold matter in reviewing claims brought pursuant to      § 1983, it is necessary to

precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here,

Plaintiff's various § 1983 claims are grounded in the Eighth and Fourteenth Amendments.

C.     **Plaintiff's claims against Defendant Conway**

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F.Supp. 2d 275, 280 (S.D.N.Y. 1999).  Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).  The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Defendants assert that Plaintiff's claims against Defendant Conway must be dismissed for lack of personal involvement.  Plaintiff contends that Defendant Conway was personally involved because he received Plaintiff's letter complaining about Defendant Kelly, and then forwarded the letter to Defendant Lavis.  But the fact that Plaintiff sent a letter to Defendant Conway is insufficient to maintain a § 1983 claim against him.  The mere receipt and forwarding of a letter does not amount to the level of personal involvement required to maintain a § 1983 claim.  See Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (holding more involvement than forwarding a letter to a hearing officer is needed to make a supervisory figure personally responsible); Goris v. Breslin, 402 F. App'x

582, 584 (2d Cir. 2010) (holding the supervisor's receipt and referral of letters to other individuals does not rise to the level of personal involvement).

Here, Plaintiff sent a letter to Defendant Conway, who allegedly forwarded it to Defendant Lavis for investigation. This is insufficient to sustain a § 1983 claim against Defendant Conway. Consequently, Plaintiff has failed to adequately allege Defendant Conway's personal involvement and his claim must therefore be dismissed.

**D.     False Misbehavior Report**

Plaintiff alleges that Defendant Kelly filed a false misbehavior report against him. Defendant argues that this claim should be dismissed for failure to state a claim upon which relief can be granted. "Prison inmates have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Therefore, the first part of Plaintiff's fourth cause of action against Defendant Kelly that is premised on the issuance of an allegedly false misbehavior report is dismissed.


## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 7) is

GRANTED in part and DENIED in part.

SO ORDERED.


Dated:       August 16, 2013
             Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M.  SKRETNY
Chief Judge
United States District Court